**Case No. 23-15860**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

JORDEN MARIE SALDANA,

*Debtor-Appellant*,

v.

MARTHA G. BRONITSKY, Chapter 13 Trustee,

*Trustee-Appellee*.

On Appeal from the United States District Court
for the Northern District of California
Case No. 5:22-cv-06223-BLF
Hon. Beth Labson Freeman

---

## APPELLEE'S ANSWERING BRIEF

---

Brent D. Meyer, Esq.
Meyer Law Group, LLP
268 Bush Street #3639
San Francisco, California 94104
Telephone: (415) 765-1588
Email: brent@meyerllp.com

Attorneys for Appellee
MARTHA G. BRONITSKY
CHAPTER 13 TRUSTEE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ……………………………………………… iv

INTRODUCTION ………………………………………………………… 1

JURISDICTIONAL STATEMENT ……………………………………… 2

STATUTORY AUTHORITIES …………………………………….….. 2

ISSUE PRESENTED …………………………………………………... 6

STATEMENT OF THE CASE …………………………………………… 6

SUMMARY OF THE ARGUMENT ……………………………………… 14

STANDARD OF REVIEW ………………………………………………… 15

ARGUMENT ………………………………………………………………… 16

    I.      STATUTORY FRAMEWORK …………………………………… 16

    II.     APPROACHES TAKEN BY OTHER COURTS …………………… 21

         A.     Voluntary 401(k) Contributions are Always Disposable Income ……………………………………………………….. 21

         B.     Voluntary 401(K) Contributions are Never Disposable Income …………………………………………………………...22

         C.     Voluntary 401(k) Contributions are Not Disposable Income When Made Consistent with Pre-Petition Amounts …………23

             i.     *Seafort*-BAP ………………………………………….. 23

             ii.    Current Monthly Income (CMI) Interpretation ……….24

    III.    ANALYSIS OF THE FOUR APPROACHES ……………………….. 25

    A.     The *Prigge* Approach …………………………………….. 26

    B.     The *Johnson* Approach …………………………………… 31

    C.     The *Seafort*-BAP Approach ………………………………… 32

    D.     The CMI Interpretation Approach …………………………... 37

CONCLUSION ………………………………………………………….. 41

STATEMENT OF RELATED CASES ………………………………… 42

CERTIFICATE OF COMPLIANCE ………………………………… 43

CERTIFICATE OF SERVICE …………………………………….. 44

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Anes v. Dehart (In re Anes), 195 F.3d 177 (3d Cir. 1999) ..................................... 18

Blausey v. U.S. Trustee, 552 F.3d 1124 (9th Cir. 2009) ...................................... 29

Bullard v. Blue Hills Bank, 575 U.S. 496 (2015) .................................................. 2

Cato v. Fresno City, 220 F.3d 1073 (9th Cir. 2000) ............................................ 2

Davis v. Helbling (In re Davis), 960 F.3d 346 (6th Cir. 2020) ...................... *passim*

Drummond v. Wiegand (In re Wiegand), 386 B.R. 238 (B.A.P. 9th Cir. 2008) .... 40

Egebjerg v. Anderson (In re Egebjerg), 574 F.3d 1045 (9th Cir. 2009) .......... *passim*

Galam v. Carmel (In re Larry's Apt., L.L.C.), 249 F.3d 832 (9th Cir. 2001) ........ 15

Hamilton v. Lanning, 560 U.S. 505 (2010) ...................................................... 17, 18

Harshbarger v. Pees (In re Harshbarger), 66 F.3d 775 (6th Cir. 1995) ................ 18

Hebbring v. U.S. Trustee, 463 F.3d 902 (9th Cir. 2006) .................................... 18

In re Anh-Thu Thi Vu, 2015 WL 6684227 (Bankr. W.D. Wash. 2015) .... 24, 25, 37

In re Aquino, 630 B.R. 499 (Bankr. D. Nev. 2021) .......................................... 21

In re Austin, 299 B.R. 482 (Bankr. E.D. Tenn. 2003) ...................................... 18

In re Cohen, 246 B.R. 658 (Bankr. D. Colo. 2000) .......................................... 18

In re Cox, 249 B.R. 29 (Bankr. N.D. Fla. 2000) .............................................. 18

In re Green, 2012 WL 8255556 (Bankr. E.D. Cal. 2012) .................................. 21

In re Greene, 583 F.3d 614 (9th Cir. 2009) .................................................... 15

In re Hansen, 244 B.R. 799 (Bankr. N.D. Ill. 2000) ........................................ 18

In re Johnson, 241 B.R. 394 (Bankr. E.D. Tex. 1999) ...................................... 18

In re Johnson, 346 B.R. 256 (Bankr. S.D. Ga. 2006) ....................................... 22

In re Keating, 298 B.R. 104 (Bankr. E.D. Mich. 2003) .................................... 18

In re McCullers, 451 B.R. 498 (Bankr. N.D. Cal. 2011) ............................... *passim*

In re Merrill, 255 B.R. 320 (Bankr. D. Or. 2000) ............................................ 18

In re Prigge, 441 B.R. 667 (Bankr. D. Mont. 2010) ...................................... 1, 21

In re Regan, 269 B.R. 693 (Bankr. W.D. Mo. 2001) ........................................ 18

In re Simpson, 557 F.3d 1010 (9th Cir. 2009) ................................................ 15

In re Strand, 375 F.3d 854 (9th Cir. 2004) .................................................... 15

Keene Corp. v. United States, 508 U.S. 200 (1993) ........................................ 29

Kelly v. Robinson, 479 U.S. 36 (1986) .......................................................... 35

Parks v. Drummond (In Re Parks), 475 B.R. 703 (B.A.P. 9th Cir. 2012) ....... *passim*

<u>Resfl Five, LLX v. Ulysse</u>, 2017 WL 4348897 (S.D. Fla. 2017) ........................... 22

<u>Russello v. United States</u>, 464 U.S. 16 (1983) ....................................... 29

<u>Seafort v. Burden (In re Seafort)</u>, 437 B.R. 204 (B.A.P. 6th Cir. 2010) .......... 23, 24

<u>Seafort v. Burden (In re Seafort)</u>, 669 F.3d 662 (6th Cir. 2012) ........................... 26

## STATUTES

11 U.S.C. § 101 ...................................................................................... 40

11 U.S.C. § 101(10A) ...................................................................... 16, 25, 32

11 U.S.C. § 101(10A)(A) ............................................................................ 38

11 U.S.C. § 101(10A)(B) ............................................................................ 38

11 U.S.C. § 101(10A)(B)(ii) ....................................................................... 17

11 U.S.C. § 541 ................................................................... 22, 24, 26, 31

11 U.S.C. § 541(a) ................................................................... 26, 32, 34

11 U.S.C. § 541(b)(7) ................................................................................. 2

11 U.S.C. § 541(b)(7)(A) .................................................... 1, 14, 19, 22, 27

11 U.S.C. § 707(b)(2) ........................................................................ 17, 20

11 U.S.C. § 707(b)(2)(A)(ii) ..................................................................... 4, 6

11 U.S.C. § 707(b)(2)(A)(ii)(I) .................................................. 20, 27, 33, 37

11 U.S.C. § 1306 ....................................................................................... 26

11 U.S.C. § 1322(f) .............................................................................. *passim*

11 U.S.C. § 1325(b)(1) ................................................................................ 3

11 U.S.C. § 1325(b)(1)(A) .......................................................................... 4

11 U.S.C. § 1325(b)(1)(B) ............................................................... 5, 16, 21

11 U.S.C. § 1325(b)(2) ......................................................................... *passim*

11 U.S.C. § 1325(b)(2)(A) .................................................................... 16, 25

11 U.S.C. § 1325(b)(2)(A)(i) ..................................................................... 27

11 U.S.C. § 1325(b)(3) ............................................................. 4, 7, 17, 25

11 U.S.C. § 1325(b)(4) .............................................................................. 40

28 U.S.C. § 1334(b) .................................................................................... 2

28 U.S.C. § 157(b)(1) .................................................................................. 2

28 U.S.C. § 157(b)(2)(L) ............................................................................. 2

28 U.S.C. § 158(a)(1) .................................................................................. 2

## OTHER AUTHORITIES

Internal Revenue Manual § 5.15.1.10 ................................................... 20, 27

Internal Revenue Manual § 5.15.1.11(3) ................................................... 36

Internal Revenue Manual § 5.15.1.23 .............................................................. 20, 30

Internal Revenue Manual § 5.15.1.28(4) ........................................................... 1, 36

Internal Revenue Manual Exhibit 5.15.1-1 ............................................................ 36

**INTRODUCTION**

The *Internal Revenue Manual* promulgated by the Internal Revenue Services, which Congress relied upon to determine "amounts reasonably necessary to be expended" under section 1325(b)(2) of the Bankruptcy Code for calculating "disposable income," expressly provides that "voluntary retirement plans are <u>*not a necessary expense*</u>" and "voluntary contributions to retirement accounts … may be considered <u>*flagrant conduct*</u>."  IRM § 5.15.1.28(4) (emphasis added).

With this backdrop, and sweeping changes to the Bankruptcy Code with enactment of the *Bankruptcy Abuse Prevention and Consumer Protection Act* (BAPCPA) in 2005, would Congress overturn the prior "overwhelming consensus" among bankruptcy courts and determine now that *voluntary* retirement contributions are not considered "disposable income" with a fleeting reference in the hanging paragraph of section 541(b)(7)(A) of the Bankruptcy Code?

There are four competing interpretations of the hanging paragraph, but intellectually, the only approach that synthesizes prior precedent, harmonizes the structure of the Bankruptcy Code, and gives meaning to each word within section 541(b)(7)(A), is the approach first adopted by <u>In re Prigge</u>, 441 B.R. 667 (Bankr. D. Mont. 2010) and endorsed by <u>Parks v. Drummond (In re Parks)</u>, 475 B.R. 703 (B.A.P. 9th Cir. 2012).  This *Prigge* Approach was specifically relied on by the Bankruptcy Court and endorsed by the District Court in this matter.

1

# JURISDICTIONAL STATEMENT

This matter comes before the United States Court of Appeals for the Ninth Circuit on appeal from an *Order Affirming the Bankruptcy Court Order on Appeal* entered by the United States District Court, Northern District of California, San Jose Division on May 15, 2023.

The United States Bankruptcy Court had original jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1), and 157(b)(2)(L). The United States District Court had jurisdiction over the intermediate appeal pursuant to 11 U.S.C. § 158(a)(1).

The *Order Confirming Chapter 13 Plan* entered by the United States Bankruptcy Court on September 26, 2022, which resulted in termination of the relevant proceeding, is a final and appealable order. See Bullard v. Blue Hills Bank, 575 U.S. 496, 502-03 (2015). Further, although the *Order Sustaining the Chapter 13 Trustee's Objection to Confirmation* was initially interlocutory, it became appealable upon entry of the *Order Confirming Chapter 13 Plan*, which was the final appealable order in the Bankruptcy Case. See Cato v. Fresno City, 220 F.3d 1073, 1074-75 (9th Cir. 2000).

# STATUTORY AUTHORITIES

Section 541(b)(7) of the Bankruptcy Code provides that "[p]roperty of the estate does not include—

(7) any amount—

    (A)    withheld by an employer from the wages of employees for payment as contributions—

        (i)    to—

            (I)    an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

            (II)    a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

            (III)    a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;

            ***except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2);*** or

        (ii)    to a health insurance plan regulated by State law whether or not subject to such title"

11 U.S.C. § 547(b)(7)(A) (emphasis added for the "hanging paragraph").

Section 1325(b)(1) of the Bankruptcy Code provides that "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

    (A)    the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

    (B)    the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the

date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."

11 U.S.C. §§ 1325(b)(1)(A)-(B).

Section 1325(b)(3) of the Bankruptcy Code provides that "[a]mounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

(A)     in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B)     in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(C)     in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 [1] per month for each individual in excess of 4."

11 U.S.C. §§ 1325(b)(3)(A)-(C).

Section 707(b)(2)(A)(ii) of the Bankruptcy Code provides:

(I)     "The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance,

and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 302 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II)     In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses. Such monthly expenses may include, if applicable, contributions to an account of a qualified ABLE program to the extent such contributions are not excess contributions (as described in section 4973(h) of the Internal Revenue Code of 1986) and if the designated beneficiary of such account is a child, stepchild, grandchild, or stepgrandchild of the debtor.

(III)    In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV)    In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to

exceed $1,500 1 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V)  In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary."

11 U.S.C. §§ 707(b)(2)(A)(ii)(I)-(V).

Section 1322(f) of the Bankruptcy Code provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." 11 U.S.C. § 1322(f).

## ISSUE PRESENTED

The sole issue on appeal is whether *voluntary* contributions to a 401(k) retirement account by a debtor shall be included in the calculation of "disposable income" for purposes of 11 U.S.C. § 1325(b)(2)?

## STATEMENT OF THE CASE

The facts of this appeal are not controverted.

On April 13, 2022 (the "Petition Date"), Jorden Marie Saldana ("Debtor" and "Appellant") filed a voluntary petition for relief under Title 11, Chapter 13 of

the United States Code.[1]  (Except of the Record ("<u>E.R.</u>") 266-272).

On April 13, 2022, Debtor filed *Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period* (Official Form 122C-1), which in relevant part, provided that Debtor's "current monthly income" on an annualized basis ($101,775.96) was greater than the median family income for a similarly situated household ($65,895.00).  (E.R. 252-255).  Debtor was considered "above-median income," and as such, the applicable commitment period for her Chapter 13 Plan was 5 years and "amounts reasonably necessary to be expended" was determined pursuant to the formula in section 1325(b)(3).  (E.R. 254).

In order to determine "amounts reasonably necessary to be expended," on April 13, 2022, Debtor also filed *Chapter 13 Calculation of Your Disposable Income* (Official Form 122C-2), which on Line 41, claimed a deduction of $601.00 for "all amounts that your employer withheld from wages as contributions for qualified retirement plans, as specified in 11 U.S.C § 541(b)(7) plus all required repayments of loans from retirement plans, as specified in 11 U.S.C § 362(b)(19)." (E.R. 256-264).  As a result, Debtor had monthly disposable income pursuant to section 1325(b)(2) of $115.90, which over a 5-year applicable commitment period, would result in a dividend payment of no less than $6,954.00 to general unsecured

---

[1] Unless otherwise specified, all statutory references hereinafter shall refer to 11 U.S.C. §§ 101 *et seq*. (the "<u>Bankruptcy Code</u>").

creditors.  (E.R. 262).

On April 13, 2022, Debtor also filed a *Chapter 13 Plan* (the "Initial Plan"),

which in relevant part, provided in Section 3.14 for a zero percent (0.00%)

distribution to Class 7 general unsecured creditors, notwithstanding that positive

disposable income was calculated pursuant to section 1325(b)(2).  (E.R. 319-325).

On April 22, 2022, Chapter 13 Trustee, Martha G. Bronitsky ("Trustee" and

"Appellee") filed *Chapter 13 Trustee's Initial Notice of Deficiencies and Objection*

*to Confirmation of Chapter 13 Plan*, which in relevant part, objected to

confirmation of the Initial Plan because "[t]he plan does not provide for all of the

Debtor's projected disposable income ("DMI") to be applied to unsecured creditors

under the plan purusant [sic] to 11 U.S.C. § 1325 (b)" (the "Initial Objection").

(E.R. 212-217).

In support of the Initial Objection, Trustee asserted as follows:

> "The following are issues regarding Debtors' DMI calculation: Form
> 122c-2 no. 17 involuntary deduction of $150 does not match Schedule
> I involuntary deduction of $100 for union dues. Debtor should reduce
> the deduction on no. 17 or file a declaration with evidentiary support
> and proof that the expense is reasonable and necessary. Furthermore,
> no. 43 lists TSA Fidelity, voluntary retirement - 6%, but fails to
> include the amount of expense.  If a deduction is added, Debtor should
> file a declaration with evidentiary support and proof that the expense
> is reasonable and necessary.  Alternatively, Debtor should remove the
> language if not deduction is going to be taken. Trustee's calculation of
> plan payments necessary to pay in Debtors' DMI may change once
> corrections are made to form 122c-2."

(E.R. 214).

On April 25, 2022, and in response to the Initial Objection, Debtor filed a *Declaration of Debtor in Support of Chapter 13 Plan*, which in relevant part, provided in Paragraph 3 that Debtor "reduced [his] voluntary retirement shown as TSA Fidelity EE on my paychecks to 6% which equates to $484 per months [sic] in order to make ends meet and perform [his] plan obligations."  (E.R. 197-198).

On May 20, 2022, Trustee filed an *Amended Chapter 13 Trustee's Initial Notice of Deficiencies and Objection to Confirmation of Chapter 13 Plan*, which again, objected to confirmation of the Initial Plan because "[t]he plan does not provide for all of the Debtor's projected disposable income ("DMI") to be applied to unsecured creditors under the plan purusant [sic] to 11 U.S.C. § 1325 (b)" (the "Amended Objection").  (E.R. 190-195).

In support of the Amended Objection, Trustee asserted as follows:

"The following are issues regarding Debtor's DMI calculation: Form 122c-2 no. 41 deducts $601 for qualified retirement deductions. Debtor testified at the 341 meeting of the creditors on May 19, 2022, that she pays $600 per month for retirement loans and owes a total of approximately $16,000.  The Trustee requests a retirement statement reflecting the balance due and interest rate to determine whether the deduction on line 41 is amortized.  Trustee's calculation of plan payments necessary to pay in Debtors' DMI may change once corrections are made to form 122c-2."

(E.R. 192).

On June 7, 2022, and in response to the Amended Objection, Debtor filed a *Declaration of Debtor in Support of Means Test*, which in relevant part,

authenticated a statement for two retirement loans, summarized as follows:

| Loan ID | Loan Amount | Payment Amount | Remaining Term | Balance Due |
|---------|-------------|----------------|----------------|-------------|
| LOAN01 | $ 12,000.00 | $ 355.63 | 26 Months | $ 9,246.38 |
| LOAN02 | $ 7,000.00 | $ 246.37 | 31 Months | $ 7,637.47 |
| **TOTAL** | **$ 19,000.00** | **$ 602.00** | | **$ 16,883.85** |

(E.R. 184-185) (the "Supplemental Declaration").

On June 29, 2022, Debtor filed amended *Chapter 13 Calculation of Your Disposable Income* (Official Form 122C-2), which on Line 41, claimed a deduction of $747.00 for "all amounts that your employer withheld from wages as contributions for qualified retirement plans, as specified in 11 U.S.C. § 541(b)(7) plus all required repayments of loans from retirement plans, as specified in 11 U.S.C. § 362(b)(19)." (E.R. 167-175). As a result, Debtor had monthly disposable income pursuant to section 1325(b)(2) of -$30.10, which over the 5-year applicable commitment period, would result in no distribution to general unsecured creditors. (E.R. 173).

On July 7, 2022, and in response to the Supplemental Declaration, Trustee filed an *Amended Chapter 13 Trustee's Initial Notice of Deficiencies and Objection to Confirmation of Chapter 13 Plan*, which again, objected to confirmation of the Initial Plan because "[t]he plan does not provide for all of the Debtor's projected disposable income ("DMI") to be applied to unsecured creditors under the plan purusant [sic] to 11 U.S.C. § 1325 (b)" (the "Second Amended

In support of the Second Amended Objection, Trustee asserted as follows:

"The following are issues regarding Debtors' DMI calculation: Amended Form 122c-2 No. 41 includes a deduction in the amount of $484 for voluntary retirement contribution (Doc. No. 25).  Voluntary retirement contributions are not deducted from disposable income. See In re Parks, 475 B.R. 703, 709 (B.A.P. 9th Cir. 2012).  Line 41 should be reduced to $281.  Trustee's calculation of plan payments necessary to pay in Debtors' DMI may change once corrections are made to form 122c-2."

(E.R. 159).

Since Amended Form 122C-2 did not specify the exact amount that Debtor was claiming as a deduction on Line 41 for voluntary contributions to retirement, Trustee was required to calculate the amount ($465.60) based on the evidence set forth in the Supplemental Declaration.  (E.R. 173).

Specifically, the monthly payment for LOAN01 was $355.63 for 26 months, resulting in an outstanding balance of $9,246.38, which amortized over the 5-year applicable commitment period, would result in allowed deduction in the amount of $154.11.  (E.R. 185).

Further, the monthly payment for LOAN02 was $246.37 for 31 months, resulting in an outstanding balance of $7,637.41, which amortized over the 5-year applicable commitment period, would result in allowed deduction in the amount of $127.29.  (E.R. 185).

As such, on Amended Form 122C-2, Debtor was entitled to a deduction of

$281.40 ($154.11 + $127.29) for repayment of retirement loans, and the remaining balance of the deduction on Line 41 $465.60 ($747.00 [deduction] - $281.40 [retirement loans]) necessarily was on account of Debtor's voluntary retirement contribution (6.0%) to TSA Fidelity as set forth on Line 43 as a deduction for special circumstances.  (E.R. 167-175, 185).

On July 28, 2022, the Bankruptcy Court held a hearing on confirmation of the Initial Plan. (E.R. 147-151).  Thereafter, the Bankruptcy Court issued an *Order Sustaining the Chapter 13 Trustee's Objection to Confirmation*, which in relevant part, sustained the Second Amended Objection and denied confirmation of the Initial Plan (the "Order Sustaining Objection").  (E.R. 152-153).  The Bankruptcy Court did not issue a separate memorandum decision.

On August 25, 2022, Debtor filed a second amended *Chapter 13 Calculation of Your Disposable Income* (Official Form 122C-2), which is relevant part, on Line 41 claimed a deduction of $281.00 for "all amounts that your employer withheld from wages as contributions for qualified retirement plans, as specified in 11 U.S.C. § 541(b)(7) plus all required repayments of loans from retirement plans, as specified in 11 U.S.C. § 362(b)(19)."  (E.R. 98-106).

As a result, Debtor had monthly disposable income pursuant to 11 U.S.C. § 1325(b)(2) of $409.77, which over a 5-year applicable commitment period, would result in a dividend payment of no less than $24,586.20 to general unsecured

creditors.  (E.R. 104).

On September 19, 2022, Debtor filed a *Second Amended Chapter 13 Plan*, which in relevant part, provided in Section 3.14 for a twenty percent (30.00%) distribution to Class 7 general unsecured creditors, which equates to approximately a $13,515.07 dividend paid *pro-rata* to general unsecured creditors (the "<u>Second Amended Plan</u>").  (E.R. 86-92).

On September 20, 2022, Trustee withdrew the Second Amened Objection. (E.R. 82).  Thereafter, the Bankruptcy Court entered an *Order Confirming Chapter 13 Plan*, which pursuant to section 1325(a), confirmed the Second Amended Plan (the "<u>Order Confirming Plan</u>").  (E.R. 72-73).

On October 8, 2022, Debtor filed a *Notice of Appeal and Statement of Election*, which in relevant part, appealed the Order Sustaining Objection and the Order Confirming Plan.  (E.R. 64-66).  Debtor elected for the appeal to proceed before the United States District Court.  (E.R. 66).

On October 10, 2022, Debtor filed a *Request for Certification of Direct Appeal to the Ninth Circuit Court of Appeals*.  (E.R. 45-48).

On October 11, 2022, the Bankruptcy Court denied Debtor's request for a direct appeal, and in relevant part, held that "[i]t is true that there is no controlling decision from the 9th Circuit on this issue.  However, Debtor has cited no cases from the lower courts in the 9th Circuit that contradict or conflict with each other.

Nor is the matter one of such public importance that it must bypass the usual appellate channels."  (E.R. 44).

On May 15, 2023, the United States District Court issued an *Order Affirming the Bankruptcy Court Order on Appeal*, which Debtor has now appealed to the United States Court of Appeals for the Ninth Circuit.  (E.R. 11-23, 827-829).

## SUMMARY OF THE ARGUMENT

Section I provides a comprehensive summary of the relevant statutory framework for the Bankruptcy Code, including prior precedent, and the relevant changes provided for with the enactment of BAPCPA with respect to calculation of "disposable income" under section 1325(b)(2).

Section II provides an overview of the four approaches developed by courts to determine whether *voluntary* retirement contributions are included in the calculation of "disposable income" under section 1325(b)(2).

Section III provides a detailed legal analysis of the four approaches and demonstrates that the *Prigge* Approach, which has almost universally been endorsed by bankruptcy courts throughout the Ninth Circuit, and which was adopted by Parks v. Drummond (In re Parks), 475 B.R. 703 (B.A.P. 9th Cir. 2012), is the only approach that synthesizes prior precedent, harmonizes the structure of the Bankruptcy Code, and intellectually gives meaning to each word within the hanging paragraph of section 541(b)(7)(A).

14

Further, the *Prigge* Approach was endorsed by the Bankruptcy Court and the District Court in this matter, and should be adopted by the Ninth Circuit, as the other three approaches (the *Johnson* Approach, the *Seafort*-BAP Approach, and the CMI Interpretation Approach) are result-oriented decisions that intellectually fail to analyze the hanging paragraph in the context of the Bankruptcy Code and apply canons of statutory construction to decipher the true intentions of Congress.

## STANDARD OF REVIEW

The Ninth Circuit reviews *de novo* a district court's decision on appeal from a bankruptcy court. See In re Greene, 583 F.3d 614, 618 (9th Cir. 2009). A bankruptcy court decision is reviewed independently and without deference to the district court's decision. See In re Strand, 375 F.3d 854, 857 (9th Cir. 2004). "The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*." Id. (*citing* Galam v. Carmel (In re Larry's Apt., L.L.C.), 249 F.3d 832, 836 (9th Cir. 2001)).

The issue of whether voluntary contributions to a 401(k) retirement account are included in the calculation of "disposable income" pursuant section 1325(b) is purely a legal issue of statutory construction, which is reviewed *de novo*. See In re JTS Corp., 617 F.3d 1102, 1109 (9th Cir. 2010); In re Simpson, 557 F.3d 1010, 1014 (9th Cir. 2009).

**ARGUMENT**

## I.      STATUTORY FRAMEWORK

Section 1325(b)(1)(B) provides in relevant part that "[i]f the trustee …

objects to the confirmation of the plan, then the court may not approve the plan

unless, as of the effective date of the plan—(B) the plan provides that all of the

debtor's *projected disposable income* to be received in the applicable commitment

period … will be applied to make payments to unsecured creditors under the plan."

11 U.S.C. § 1325(b)(1)(B) (emphasis added).

Although the term "projected disposable income" in not specifically defined

in the Bankruptcy Code, section 1325(b)(2) defines "disposable income" as

"current monthly income received by the debtor … less amounts reasonably

necessary to be expended … for the maintenance or support of the debtor or a

dependent of the debtor."  11 U.S.C. § 1325(b)(2)(A).

"Current monthly income" is defined as "the average monthly income from

all sources that the debtor receives … without regard to whether such income is

taxable income, derived during the 6-month period" preceding the filing of the

bankruptcy case.  11 U.S.C. § 101(10A).  From this definition of "current monthly

income" there are three categories of income specifically excluded under section

1325(b)(2) (child support payments, foster care payments, or disability payments

for a dependent child) and there are four additional categories specifically excluded

under section 101(10A)(B)(ii) (benefits received under the Social Security Act, payments to victims of war crimes, payments to victims of international terrorism, and certain payments to service members for disability or death).  See 11 U.S.C. §§ 101(10A)(B)(ii); 1325(b)(2).

For "above-median income" debtors (such as Appellant), "amounts reasonably necessary to be expended" are determined by the National and Local Standards promulgated by the Internal Revenue Service pursuant to section 707(b)(2) of the Bankruptcy Code.  See 11 U.S.C. § 1325(b)(3).

Although "current monthly income" and "amounts reasonably necessary to be expended" are based on precise, rigid formulas developed by Congress with enactment of the *Bankruptcy Abuse Prevention and Consumer Protection Act* (BAPCPA) of 2005, the Supreme Court has authorized the bankruptcy court to adjust a debtor's "projected disposable income" under limited circumstances and "account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."  Hamilton v. Lanning, 560 U.S. 505, 524 (2010).

As such, determining a debtor's "projected disposable income" is a two-step process.  First, the debtor's current "disposable income" is determined by the formula set forth in section 1325(b)(2) of the Bankruptcy Code.  Lanning, 560 U.S. at 519.  Second, in limited circumstances, that amount is adjusted for changes

"known or virtually certain" at the time of confirmation to occur during the applicable commitment period.  Id.

When a debtor does not expect changes in financial circumstances, as "in most cases," "projected disposable income" pursuant to section 1325(b)(1) is simply the "disposable income" amount calculated under section 1325(b)(2) of the Bankruptcy Code.  See Lanning, 560 U.S. at 519.  "It is only in unusual cases that a [bankruptcy] court may go further and take into account other known or virtually certain information about the debtor's future income or expenses."  Id.

Prior to enactment of BAPCPA in 2005, the "overwhelming consensus" among bankruptcy courts was that wages voluntarily withheld as 401(k) contributions formed part of a debtor's disposable income.  See Davis v. Helbling (In re Davis), 960 F.3d 346, 350 (6th Cir. 2020) (citing In re Johnson, 241 B.R. 394, 399 (Bankr. E.D. Tex. 1999); In re Austin, 299 B.R. 482, 486-87 (Bankr. E.D. Tenn. 2003); In re Keating, 298 B.R. 104, 110 (Bankr. E.D. Mich. 2003); In re Regan, 269 B.R. 693, 696-97 (Bankr. W.D. Mo. 2001); In re Merrill, 255 B.R. 320, 323-24 (Bankr. D. Or. 2000); In re Cox, 249 B.R. 29, 32 (Bankr. N.D. Fla. 2000); In re Cohen, 246 B.R. 658, 666-67 (Bankr. D. Colo. 2000); In re Hansen, 244 B.R. 799, 802 (Bankr. N.D. Ill. 2000); Anes v. Dehart (In re Anes), 195 F.3d 177, 180-81 (3d Cir. 1999); Harshbarger v. Pees (In re Harshbarger), 66 F.3d 775, 777 (6th Cir. 1995); but see Hebbring v. U.S. Trustee, 463 F.3d 902, 906-07 (9th

Cir. 2006) (adopting a case-by-case analysis to determine whether post-petition contributions were disposable income).

However, with the enactment of BAPCPA, there were several significant amendments to the Bankruptcy Code that altered this "overwhelming consensus" among the bankruptcy courts.

First, section 541(b)(7) provides in relevant part that:

"(b) Property of the estate does not include—

…

(7) any amount—

    (A)    withheld by an employer from the wages of employees for payment as contributions—

        (i)    to—

            (I)    an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 [commonly known as a 401(k) retirement plan] or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

        …

*except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)"*

11 U.S.C. § 541(b)(7)(A) (emphasis added for the "hanging paragraph").

Second, section 1322(f) provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay

such loan shall not constitute 'disposable income' under section 1325." 11 U.S.C. § 1322(f).

Third, for above-median income debtors, the "amounts reasonably necessary to be expended" are determined by reference to section 707(b)(2), which provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the *National Standards and Local Standards*, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service." See 11 U.S.C. § 707(b)(2)(A)(ii)(I).

In turn, "the Internal Revenue Manual ("IRM") lists fifteen categories of expenses which may be considered necessary under certain circumstances, such as child care, education and court-ordered payments such as alimony and child support." Egebjerg v. Anderson (In re Egebjerg), 574 F.3d 1045, 1051 (9th Cir. 2009) (citing IRM § 5.15.1.10). However, "the IRS guidelines themselves provide that '[c]ontributions to voluntary retirement plans are *not a necessary expense*.'" Id. at 1052 (alteration in original) (*quoting* IRM § 5.15.1.23) (emphasis added).

Given the modified statutory framework, in light of prior precedent, there has been "considerable disagreement between courts and litigants nationwide" on whether *voluntary* 401(k) contributions constitute "disposable income" under section 1325(b). See In re Davis, 960 F.3d at 351. Specifically, "BAPCPA's

insertion of the hanging paragraph into § 541(b)(7) has taken us from an 'overwhelming consensus' among bankruptcy courts to four competing views of whether voluntary retirement contributions constitute disposable income in a Chapter 13 bankruptcy."  Id. at 352-53 (internal citation omitted).

## II.    APPROACHES TAKEN BY OTHER COURTS

There are four divergent views developed by courts to determine the issue on appeal, and a comprehensive review of the relevant case law is summarized in In re Aquino, 630 B.R. 499, 548-94 (Bankr. D. Nev. 2021).

### A.    Voluntary 401(k) Contributions are Always Disposable Income

Several courts have held that *voluntary* 401(k) contributions always constitute disposable income for above-median income debtors for purposes of calculating "projected disposable income" under section 1325(b)(1)(B).  This approach can be traced to In re Prigge, 441 B.R. 667 (Bankr. D. Mont. 2010), which has been endorsed by bankruptcy courts throughout the Ninth Circuit.  See In re Aquino, 630 B.R. at 499; In re Green, 2012 WL 8255556 (Bankr. E.D. Cal. 2012); In re McCullers, 451 B.R. 498 (Bankr. N.D. Cal. 2011).

In addition, the Bankruptcy Appellate Panel for the Ninth Circuit adopted this approach in In re Parks, 475 B.R. at 703, which the Bankruptcy Court specifically relied upon in this matter.

This approach "focuses on the location of the hanging paragraph within

[section] 541." In re Davis, 960 F.3d at 351 (*citing* In re Parks, 475 B.R. at 708).

Specifically, section 541 defines the contours of the bankruptcy estate, which is a

concept dealing primarily with pre-petition assets. See 11 U.S.C. § 541. As such,

drawing clues from the location of the statute in the context of the overall structure

of the Bankruptcy Code, this approach concludes that the hanging paragraph

excludes from property of the estate only 401(k) contributions that were made

prior to the petition date. See In re Parks, 475 B.R. at 708. However, any

*voluntary* retirement contribution made after the petition date shall be included in

the calculation of "disposable income" under section 1325(b)(2).

### B. Voluntary 401(k) Contributions are Never Disposable Income

Another approach is that *voluntary* 401(k) contributions never constitute

disposable income for purposes of calculating "projected disposable income" under

section 1325(b)(1)(B), and as such, a debtor can make *voluntary* post-petition

contributions to a qualified retirement plan up to the maximum amount permitted

under non-bankruptcy law governing the retirement plan. This approach is often

traced to In re Johnson, 346 B.R. 256 (Bankr. S.D. Ga. 2006), which appears to be

the approach adopted by a majority of bankruptcy courts. See Resfl Five, LLC v.

Ulysse, 2017 WL 4348897, at *6 (S.D. Fla. Sept. 29, 2017).

This approach focuses on the express language of section 541(b)(7)(A),

which along with section 1322(f), "both plainly state that these contributions 'shall

not constitute disposable income,'" and as such, "Congress has placed retirement contributions outside the purview of a Chapter 13 plan." In re Johnson, 346 B.R. at 263. "Debtors may fund 401(k) plans in good faith, so long as their contributions do not exceed the limits legally permitted by their 401(k) plans," regardless of whether these contributions were made pre-petition. Id.

## C. Voluntary 401(k) Contributions are Not Disposable Income When Made Consistent with Pre-Petition Amounts

The other line of cases hold that *voluntary* 401(k) contributions are not "disposable income," but only to the extent that those contributions were being made as of the petition date, for purposes of calculating "projected disposable income" under section 1325(b)(1)(B). See In re Davis, 960 F.3d at 352. There are two divergent lines of reasoning (discussed below) that reach the same outcome.

In In re Davis, the Sixth Circuit adopted this approach, but specifically declined to endorse either line of reasoning. Id. at 357 ("[w]e do not choose between the *Seafort*-BAP and CMI interpretations because either would produce the same result in this case").

### i. *Seafort*-BAP

The first interpretation referred to as the *Seafort*-BAP Approach comes from the Bankruptcy Appellate Panel for the Sixth Circuit in Seafort v. Burden (In re Seafort), 437 B.R. 204 (B.A.P. 6th Cir. 2010). This approach "also focuses on the

hanging paragraph's placement in [section] 541, but unlike <u>Prigge</u>, construes the hanging paragraph to exclude the debtor's pre-petition contribution *amount* — rather than merely … accumulated savings—from … disposable income under [section] 1325(b)(2)." <u>In re Davis</u>, 960 F.3d at 352 (emphasis in original) (*citing* <u>In re Seafort</u>, 437 B.R. at 210).

Under this approach, a debtor may deduct voluntary 401(k) contributions from disposable income if they made an equal or greater monthly contribution prior to the petition date. <u>See</u> <u>In re Seafort</u>, 437 B.R. at 210.

### ii. Current Monthly Income (CMI) Interpretation

The second interpretation referred to as the "CMI Interpretation," which has been referred to as a modified version of *Seafort*-BAP, comes from <u>In re Anh-Thu Thi Vu</u>, 2015 WL 6684227 (Bankr. W.D. Wash. June 16, 2015). This approach "construes the hanging paragraph as excluding the debtor's pre-petition contributions from the calculation of … 'current monthly income'—a subcomponent of § 1325(b)(2)'s disposable-income calculation." <u>In re Davis</u>, 960 F.3d at 352. The CMI Interpretation allows a debtor to deduct from disposable income the average 401(k) contributions made in the six-month period preceding the petition date. <u>In re Vu</u>, 2015 WL 6684227, at *4-5.

Generally, the CMI Interpretation will provide the same result as the *Seafort*-BAP Approach, unless the debtor did not make voluntary contributions for

the entire six-month period preceding the petition date.

Further, this approach results in the same treatment for "above-median income" and "below-median income" debtors, because the voluntary contribution is taken out of the calculation of "current monthly income" under section 101(10A), and not from the "amounts reasonably necessary to be expended" under section 1325(b)(2)(A) and 1325(b)(3).  See In re Vu, 2015 WL 6684227, at *7-8.

## III.    ANALYSIS OF THE FOUR APPROACHES

As set forth in Section II. above, the Bankruptcy Appellate Panel for the Ninth Circuit in In re Parks, 475 B.R. at 703 specifically addressed the issue on appeal in this matter, and consistent with the *Prigge* Approach, determined that *voluntary* 401(k) contributions *always* constitute "disposable income."  The Bankruptcy Court and the District Court each endorsed the *Prigge* Approach in this matter.  However, the Ninth Circuit has not addressed this specific issue.

The Sixth Circuit is the only circuit that has addressed the issue on appeal in this matter in In re Davis, 960 F.3d at 346, and although declining to choose between the *Seafort*-BAP Approach and the CMI Interpretation, determined that *voluntary* 401(k) contributions *never* constitute "disposable income," provided however, that these contributions were made by debtor in a similar or greater amount prior to the petition date.

## A.    The *Prigge* Approach

The *Prigge* Approach represents the most logical and intellectually consistent interpretation for the hanging paragraph in section 541(b)(7)(A)(i) with respect to *voluntary* 401(k) contributions and calculation of "disposable income."

First, and most importantly, the overall structure of the Bankruptcy Code is the most instructive in resolving this issue of statutory interpretation.

Section 1306 defines property of the estate for Chapter 13 cases, which includes "the property specified in section 541," as well as certain property acquired and earnings from services performed after the petition date but before closing of the case.  See 11 U.S.C. § 1306.

In turn, section 541, which includes the hanging paragraph, defines property of the estate as of the petition date.  See 11 U.S.C. § 541.  Section 541(a)(1) defines property of the estate as including "all legal or equitable interest of the debtor in property as of the commencement of the case" and section 541(a)(6) provides that "earnings from services performed by an individual debtor after the commencement of the case" are not brought into the estate.  11 U.S.C. § 541(a).

Read together, "[section] 541 fixes property of the estate as of the date of filing, while [section] 1306 adds to the 'property of the estate' property interests which arise post-petition" for Chapter 13 cases.  Seafort v. Burden (In re Seafort), 669 F.3d 662, 667 (6th Cir. 2012).

Section 1325 then governs the confirmation process for Chapter 13 plan.

See 11 U.S.C. § 1325. Specifically, "disposable income" is defined as the debtor's "current monthly income … less amounts reasonably necessary to be expended … for the maintenance or support of the debtor." 11 U.S.C. § 1325(b)(2)(A)(i). For above-median income debtors, the "amounts reasonably necessary to be expended" are determined by reference to section 707(b)(2)(A)-(B)." 11 U.S.C. § 1325(b)(3).

Section 707(b) then provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service." 11 U.S.C. § 707(b)(2)(A)(ii)(I).

 "[T]he Internal Revenue Manual ("IRM") lists fifteen categories of expenses which may be considered necessary under certain circumstances, such as child care, education and court-ordered payments such as alimony and child support." Egebjerg, 574 F.3d at 1051 (citing IRM § 5.15.1.10). Importantly, as the Ninth Circuit specifically recognized, "the IRS guidelines themselves provide that '[c]ontributions to voluntary retirement plans are not a necessary expense.'" Id. at 1052.

Given this statutory framework and the structure of the Bankruptcy Code, "[t]he most logical and reasonable interpretation is that section 541(b)(7)(A)

excludes from property of the estate only those contributions made before the petition date." In re McCullers, 451 B.R. at 503. "That Congress intended to exclude from disposable income only the same prepetition contributions excluded from property of the estate is indicated by its specifying the contributions excluded from property of the estate and then stating that 'such amount' shall not constitute disposable income." Id. at 503-04.

Further, use of the term "except that" in section 541(b)(7)(A) "suggests that the purpose of the language is merely to counteract any suggestion that the exclusion of such contributions from property of the estate constitutes postpetition income to the debtor." In re McCullers, 451 B.R. at 504. "If Congress had intended to exclude prepetition contributions from the calculation of disposable income more generally, it would have been much more natural for Congress to provide that such contributions are excluded from property of the estate 'and' in the calculation of disposable income." Id.; see also In re Parks, 475 B.R. at 708 ("we are persuaded that the term 'except that' in the hanging paragraph was designed simply to clarify that the voluntary retirement contributions excluded from property of the estate are not postpetition income to the debtor"); In re Davis, 960 F.3d at 356 ("the hanging paragraph … appear[s] to use 'except that' to mean something like 'moreover' or 'and also'").

Second, section 1322(f), which was part of the comprehensive BAPCPA

amendments to the Bankruptcy Code, provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." 11 U.S.C. § 1322(f). Congress explicitly excluded repayment of 401(k) loans from "disposable income," but declined to do the same with respect to *voluntary* post-petition 401(k) contributions. Id.

"[W]here Congress includes particular language in one section of a statute but omits it in another … it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Keene Corp. v. United States, 508 U.S. 200, 208 (1993) (alterations in original) (*quoting* Russello v. United States, 464 U.S. 16, 23 (1983)).

Third, for above-median income debtors, "amounts reasonably necessary to be expended" are determined by reference to section 707(b)(2)(A)-(B). See 11 U.S.C. § 1325(b)(3). Specifically, "[v]oluntary contributions to 401(k) retirement plans are not mentioned as 'reasonable and necessary expenses' under the 'means test' set forth in § 707(b)(2)(A) & (B)." In re Parks, 475 B.R. at 709 (citations omitted). This "suggests that Congress did not intend [section] 541(b)(7)(A) to exclude postpetition 401(k) contributions from disposable income." Id.

Further, and more compelling, in Egebjerg, the Ninth Circuit recognized that "[w]hen it introduced the means test, Congress provided, by reference to the IRS

29

guidelines, specific guidance as to what qualifies as a necessary expense for the purposes of applying that test." 574 F.3d at 1052. However, "the IRS guidelines themselves provide that '[c]ontributions to voluntary retirement plans are not a necessary expense.'" Id. (alteration in original) (*quoting* IRM § 5.15.1.23).

The Ninth Circuit has instructed that it did "not hold that [section] 5.15.1.23 is controlling," and that it did not "mean to imply that the IRS standards have been incorporated wholesale into the Bankruptcy Code or that they control outcomes on other issues." Id. at 1052 n.3.

However, given the sweeping changes to the Bankruptcy Code with the enactment of BAPCPA, it is difficult to comprehend that Congress would universally incorporate necessary expenses with reference to the IRS guidelines, which do not recognize *voluntary* 401(k) contributions as a necessary expense, but inexplicitly then excluded these *voluntary* contributions from "disposable income" in the inartfully drafted hanging paragraph of section 541(b)(7)(A).

Fourth, prior to enactment of BAPCPA, the "overwhelming consensus" among bankruptcy courts was that wages voluntarily withheld as 401(k) contributions formed part of a debtor's disposable income. See In re Davis, 960 F.3d at 350 (citations omitted).

As such, it is also difficult to comprehend that Congress actually intended to overturn this overwhelming pre-BAPCPA precedent with a fleeting reference to

"disposable income" in a section of the Bankruptcy Code dedicated to defining property of the estate (11 U.S.C. § 541), while otherwise meticulously defining "current monthly income" under section 101(10A) and "amounts reasonably necessary to be expended" in section 707(b)(2)(A)-(B) for purposes of determining "disposable income" under section 1325(b)(2).

### B.    The *Johnson* Approach

The *Johnson* Approach, apparently adopted by a majority of the bankruptcy courts deciding the issue, is significantly flawed.  Specifically, the *Johnson* Approach "focus[es] only on the language stating that the contributions specified 'under this subparagraph [i.e. 541(b)(7)] shall not constitute disposable income as defined in section 1325(b)(2).'" In re McCullers, 451 B.R. at 503.  However, "[t]hese decisions, all issued before [*Seafort*-BAP], do not address the interpretive puzzle addressed in [*Seafort*-BAP]: that the amount excluded from disposable income under section 541(b)(7) is plainly linked to the debtor's postpetition contributions." Id.

Similarly, and relying on In re McCullers, the Sixth Circuit also rejected the *Johnson* Approach "because [it] do[es] not read [section] 541(b)(7) within the larger context of [section] 541 as a whole." In re Seafort, 669 F.3d at 673; see also In re Davis, 960 F.3d at 353 ("[w]ithout deciding the precise question before us today, this court squarely rejected Johnson's reasoning in Seafort, 669 F.3d at

674").

The *Johnson* Approach is woefully inadequate and should be summarily rejected because it fails to fully grapple with the interpretative puzzle of section 541(b)(7)(A) within the broader context of section 541(a), which is the lynchpin of the issue on appeal, and because it also allows a debtor to deduct the maximum contribution authorized under the applicable retirement plan, notwithstanding that the debtor never made these contributions pre-petition.

### C.    The *Seafort*-BAP Approach

As recognized in In re McCullers, "[a]t first glance, [*Seafort*-BAP] is more persuasive, because it adopts an attractive and plausible policy: that Congress intended to encourage chapter 13 debtors to continue making retirement contributions, but did not intend to permit debtors to increase their rate of contribution to the detriment of their creditors."  451 B.R. at 504.

However, a close analysis of section 547(b)(7)(A) suggests that Congress intended a much more limited effect for the hanging paragraph.

First, neither the statutory text of section 547(b)(7)(A) nor the *Seafort*-BAP opinion provides "any mechanism by which the fixed amount withheld as of the petition date is converted into a monthly rate of contribution that the debtor may continue postpetition."  In re McCullers, 451 B.R. at 504.

Specifically, section 541(b)(7) provides that "*any amount*—withheld by an

32

employer from the wages of employees for payment as contributions" for certain retirement accounts (including 401(k) accounts) are not property of the estate. 11 U.S.C. § 541(b)(7)(A) (emphasis added). Thereafter, the hanging paragraph refers to "such amounts," which the *Seafort*-BAP Approach specifically excludes from the calculation of "disposable income."

However, this interpretation begs the fundamental question – what amount is excluded from the calculations of "disposable income" and included on Line 41 of *Official Form 122C-2* (the Means Test)? Does the debtor exclude *any amount* withheld during their entire career? Or, is it *any amount* withheld during the six-month period preceding the petition date consistent with the calculation of "current monthly income"? Perhaps it is *any amount* withheld in the month immediately preceding the petition date? Even more troubling, how is this *any amount* normalized on a monthly basis for inclusion on Line 41 of the Means Test?

This is a fundamental flaw for the approach, as section 541(b)(7)(A) and the *Seafort*-BAP decision do not provide any guidance on the mechanism to convert the fixed amount withheld as of the petition date into a monthly contribution that a debtor can include on Line 41 of the Means Test.

As set forth in detail in section 101(10A) ("current monthly income") and section 707(b)(2)(A)-(B) ("amounts reasonably necessary to be expended"), Congress knew exactly how to calculate monthly amounts necessary to determine

"disposable income" under section 1325(b)(2), and it defies logic and common sense that Congress purposefully declined to establish a formula for the monthly amount (if any) that a debtor could deduct for voluntary 401(k) contributions.

Second, and more importantly, the *Seafort*-BAP Approach does not take into account the "except that" language at beginning of the hanging paragraph.  As set forth in detail in Section III.A. above, "use of the term 'except that' suggests that the purpose of the language is merely to counteract any suggestion that the exclusion of such contributions from property of the estate constitutes postpetition income to the debtor."   In re McCullers, 451 B.R. at 504.

"If Congress had intended to exclude prepetition contributions from the calculation of disposable income more generally, it would have been much more natural for Congress to provide that such contributions are excluded from property of the estate *'and'* in the calculation of disposable income."  Id. (emphasis added). Interpreting "except that" in the hanging paragraph as a word of inclusion, similar to "and" or "in addition," strains the plain meaning of the English language.

Third, the *Seafort*-BAP interpretation of the hanging paragraph fails to make sense of its location within the structure of the Bankruptcy Code.  The hanging paragraph is located in section 541, which, by its title, addresses "Property of the Estate."  Property of the estate consists of assets held by the debtor as of the petition date.  See 11 U.S.C. § 541(a)(1).  Why would a section about property of

the estate ever sweep in something—post-petition 401(k) contributions—that nobody logically contends would ever be construed as property of the estate? Had Congress truly intended to effect the change suggested by the *Seafort*-BAP Approach, undoubtedly it would have included the hanging paragraph (or a similar provision) in the relevant section of Chapter 13, not in the broader "property of the estate" section of the Bankruptcy Code applicable to both Chapter 7 and Chapter 13 debtors. Compare 11 U.S.C. § 1322(f) *with* 11 U.S.C. § 541(b)(7)(A).

Congress's draftsmanship is particularly head-scratching under the *Seafort*-BAP Approach, in that through the hanging paragraph, Congress sought to make a significant change from how the "overwhelming majority" of bankruptcy courts treated *voluntary* 401(k) contributions prior to BAPCPA. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." Kelly v. Robinson, 479 U.S. 36, 47 (1986) (internal citations and quotations omitted).

If Congress truly intended to effectuate "significant change" from the pre-BAPCPA background rule that post-petition *voluntary* 401(k) contributions are disposable income, it is bewildering, at best, that Congress chose to do so through an ostensibly misplaced hanging paragraph. The Bankruptcy Code and intellectual integrity demand a more thoughtful consideration of the hanging paragraph.

Fourth, the *Seafort*-BAP approach fails to reconcile a fundamental

distinction between *involuntary* retirement contributions (pensions) and *voluntary*

retirement contributions (401(k) accounts), which is unequivocally provided for

throughout the *Internal Revenue Manual* ("IRM").

Of the fifteen categories of other expenses set forth in the IRM considered

necessary for purposes of section 707(b)(2)(A)(ii)(I), a debtor is authorized to

deduct *involuntary* retirement contributions from the calculation of "disposable

income."  See IRM § 5.15.1.11(3) (involuntary deductions are authorized "[i]f it is

a requirement of the job").  More specifically, the IRM provides as follows:

> **Question**
> "If, as a condition of employment, … an employee is required to
> contribute to a pension plan, will these expenses be allowed?"
>
> **Answer**
> "The only thing to consider is whether the amount being
> contributed equals the amount actually required and *does not
> include a voluntary portion*."

See IRM Exhibit 5.15.1-1 (emphasis added).

However, with respect to *voluntary* retirement contributions, the IRM

expressly provides that "voluntary retirement plans *are not a necessary expense*"

and "*voluntary contributions* to retirement accounts … may be *considered flagrant

conduct*."  IRM § 5.15.1.28(4) (emphasis added).

In determining the applicability of "other necessary expenses" for purposes

of section 707(b)(2)(A)(ii)(I), the Ninth Circuit has specifically relied upon the

IRM finding it "useful and persuasive in the context of … defining the parameters of § 5.15.1.10(1) and what was considered to provide for 'health and welfare' at the time Congress cross-referenced the IRM's 'Other Necessary Expenses' provisions." Egebjerg, 574 F.3d at 1052, fn. 3.

Given the persuasiveness of the IRM and its express rejection of *voluntary* retirement contributions as an allowable expense, which is considered "flagrant conduct," it is counterintuitive and defies logic for the *Seafort*-BAP Approach to broadly authorize such a deduction from the calculation of "disposable income" without recognizing the categorical rejection of this expense in the IRM.

If Congress intended to modify those categories of allowable expenses authorized by the IRM, to accomplish this result, the hanging paragraph certainly would not be contained within section 541 (property of the estate) of the Bankruptcy Code and Congress undoubtedly would have used markedly different statutory language. See 11 U.S.C. § 1322(f).

### D. The CMI Interpretation Approach

In Vu, the Bankruptcy Court adopted a modified version of the *Seafort*-BAP Approach and determined that section "541(b)(7)'s hanging paragraph excludes pre-petition voluntary retirement contributions from the calculation of 'current monthly income.'" In re Vu, 2015 WL 6684227, at *6-7.

According to the Bankruptcy Court, "[t]his interpretation gives substantive

application to the hanging paragraph, unlike the very narrow interpretation of that paragraph in <u>Prigge</u> …; it also results in above- and below-median [income] debtors being treated the same, as opposed to having different rules for deductibility of voluntary retirement contributions; and it fosters the overall policy seen throughout the 2005 amendments to the Bankruptcy Code of protecting debtors' retirement contributions."  <u>In re Vu</u>, 2015 WL 6684227, at *7-8.

In addition to those fundamental flaws identified in Section III.C above, there are at least two other statutory concerns with the CMI Interpretation Approach.

<u>First</u>, section 101(10A)(A) defines "current monthly income" as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income," including "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents."  11 U.S.C. § 101(10A)(A).

The statute specifically excludes three types of payments from the definition of "current monthly income," including "benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism . . . or domestic terrorism . . . on account of their status as victims of such terrorism."  11 U.S.C. § 101(10A)(B).  The Bankruptcy Code does not define "income."  <u>See</u> 11 U.S.C. § 101.

With respect to section 101(10A), the Ninth Circuit has relied on the general rule of statutory construction *expressio unius est exclusio alterius* in holding that "section 101(10A)(B) makes several specific exclusions from ['current monthly income'] but does not specifically exclude private disability insurance benefits. This indicates that Congress meant for the benefits to be included in ['current monthly income']." <u>Blausey v. U.S. Trustee</u>, 552 F.3d 1124, 1133 (9th Cir. 2009).

This same logic also applies to the CMI Interpretation Approach. Section 101(10A)(B) does not expressly exclude *voluntary* 401(k) contributions from the definition of "current monthly income," which is the specific statute on point, and it is difficult to comprehend that Congress would use a vague reference to "disposable income" in the hanging paragraph of section 541(b)(7)(A) to further exclude these contributions from the calculation of "current monthly income."

Section 1325(b)(2) further limits the definition of "current monthly income" for purposes of calculating "disposable income," and also excludes "child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary." 11 U.S.C. § 1325(b)(2).

Given that Congress knew how to limit those categories excluded from the calculation of "current monthly income," and expressly did so in two different sections of the Bankruptcy Code, it is dubious that Congress utilized the hanging

paragraph in section 541(b)(2)(7) to further reduce "current monthly income."

Second, the calculation of "current monthly income" is also utilized to determine the "applicable commitment period" for Chapter 13 plans (3 years for below-median income debtors and 5 years for above-median income debtors) pursuant to section 1325(b)(4).  See 11 U.S.C. § 1325(b)(4).

To the extent that debtors are authorized to deduct voluntary 401(k) contributions from the calculation of "current monthly income," there is also a legitimate possibility that the "applicable commitment period" could be reduced from 5-years to 3-years, which would further erode dividends paid to general unsecured creditors.  See Drummond v. Wiegand (In re Wiegand), 386 B.R. 238, 242 (B.A.P. 9th Cir. 2008) (business expenses should be deducted in calculating disposable income below Line 15 of Form B22A [old form] and Line 23 of Form B22C [old form], rather than in calculation of "current monthly income").

///

///

///

///

///

///

**CONCLUSION**

Based on the foregoing, Trustee respectfully requests that this Court enter an order affirming the *Order Sustaining the Chapter 13 Trustee's Objection to Confirmation* and the *Order Confirming Chapter 13 Plan* issued by the United States Bankruptcy Court in this matter.

Date: October 23, 2023                Respectfully submitted.

                                          **MEYER LAW GROUP, LLP**

                                          /s/ BRENT D. MEYER
                                          Brent D. Meyer, Esq.
                                          Meyer Law Group, LLP
                                          268 Bush Street #3639
                                          San Francisco, California 94104
                                          Telephone: (415) 765-1588
                                          Email: brent@meyerllp.com

                                          Attorneys for Appellee
                                          MARTHA G. BRONITSKY
                                          CHAPTER 13 TRUSTEE

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number(s)** 23-15860

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** /s/ BRENT D. MEYER_____ **Date** October 23, 2023_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** 23-15860

I am the attorney or self-represented party.

**This brief contains 10,483 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ BRENT D. MEYER_____ **Date** October 23, 2023_____

**Certificate of Service for Electronic Filing**

**9th Cir. Case Number(s)** 23-15860

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**[X] Service on Case Participants Who Are Registered for Electronic Filing:**

I certify that the foregoing document(s) were served on October 23, 2023 via email to all registered case participants whom consented to receive services of all pleadings electronically via the Appellate Electronic Filing system.

COUNSEL FOR APPELLANT:    Michael J. Primus
*mjp@michaelprimus.com,*
*lawofficeofmichaelprimus@jubileebk.net*

COUNSEL FOR APPELLEE:    Sarah R. Velasco
*velasco@oak13.com*

COUNSEL FOR AMICI CURIAE:    Christina Latta Henry
*chenry@hdm-legal.com,*
*mainline@hdm-legal.com,*
*henrydegraaffps@jubileebk.net*

**[ ] Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants (list each name and mailing/email address):

**Description of Document(s) (required for all documents):**

      **APPELLEE'S ANSWERING BRIEF**


**Signature** /s/ BRENT D. MEYER      **Date** October 23, 2023